## Case No. 7,524.

JORDAN et al. v. WARREN INS. CO.

[1 Story, 342;¹ 4 Law Rep. 12.]

Circuit Court, D. Massachusetts. Oct. Term, 1840.

¹ [Reported by William W. Story, Esq.]

Daniel Webster and J. P. Healey, for plaintiffs.

Theophilus Parsons and Theo. P. Chandler, for defendants.

STORY, Circuit Justice. Two questions of law have been presented for the consideration of the court, by the counsel for the defendants. (1.) That, under the circumstances of the present case, there has been no loss of the freight for the voyage, for which the underwriters are liable under the policy. (2.) If there has been, then the underwriters are entitled to the freight of the substituted voyage to England, as in the nature of a salvage of freight. The latter ground is maintained upon the footing of the authority of the case of Everth v. Smith, 2 Maule & S. 278, and that of McCarthy v. Abel, 5 East, 388. In both of those cases, the voyage insured was actually performed, and freight was earned. In the case in 5 East. 388. the very freight insured was earned; but the owner of the ship had abandoned it to the underwriters on freight, while the vessel was held under a hostile embargo in a foreign port, from which she was afterwards released, and earned her freight: and the court held, that the loss of freight, if any, was by the abandonment, and not by any peril insured against. In the case in 2 Maule & S. 278, freight was earned on the very voyage insured (at and from Riga, and any other ports in the Baltic, to any ports in the United Kingdom); but it was not the very freight stipulated in the charter party, under which the ship sailed on the original outward voyage; but a freight from Riga to London; obtained from other persons; and thus a substituted freight was earned. which was properly treated by the court, as a salvage freight. The court said, that this was an insurance on freight gen-

erally, and not on any specific freight. The underwriters did not insure, that any particular freight should be brought home; but if any freight is brought home, a loss has not happened, for which he undertook to indemnify the assured. There seems no reason to doubt the authority or correctness of either of these decisions. But they are founded altogether upon a consideration, which has no existence in the present case. There, the voyage on which freight was earned was the very voyage insured, and which had not then terminated. Here, the voyage was entirely new, to a new port. The terminus of the old voyage was Havre; of the new voyage, was England. The old voyage to Havre was terminated; and the new voyage had not the slightest connexion with it. I know of no principle or authority, upon which the court can say, that the underwriters have a right to avail themselves of a freight earned in a new voyage, which they have not insured, by way of recompense for losses on another voyage, which they have insured, and which has already terminated.

The real question, then, and the only one before the court, is that first stated. The question is not, whether the freight insured has been lost, (although the circumstances of the case are so imperfectly stated, that there is great obscurity, as to the manner of settling the controversy between the owners and the freighters,) but whether it has been lost by any peril insured against, so as to make the underwriters liable therefor. The ship was duly refitted for the voyage, and capable of resuming it within a reasonable time; and if the condition of the cargo had been then such, that it could have been reshipped for the voyage, the master had a right to require it to be shipped, and was bound to proceed with it on the voyage; or, if he did not, the freight, if lost, would be lost by his default, and not by any peril insured against. It has been suggested, that the time of the detention of the ship to refit was longer than the actual voyage to Havre; and, therefore that the master might reasonably refuse to proceed on the voyage. But the underwriters take upon themselves no risk whatsoever, as to the length or duration of the voyage insured. What they undertake is, that, notwithstanding any of the perils insured against, the ship shall be capable of performing the voyage, so as to earn the freight insured; not that the voyage shall be performed in a longer or a shorter period. The owner takes upon himself the chances of a short, or of a protracted passage. This doctrine was fully recognized in Anderson v. Wallis, 2 Maule & S. 240, and applied to the very case of an insurance on freight in Everth v. Smith, 2 Maule & S. 278. In the latter case, the court held, that the underwriter had nothing to do with the temporary retardation, or protraction, or interruption of the voyage, if it was ultimately resumed, or capable of being resumed and performed. And upon that occasion, Lord Ellenborough alluded to the doctrine in the former case, and repeated the question: "What case has ever yet decided, that such a temporary retardation (not going, as he added afterwards, to a destruction of the contemplated adventure) is a good cause of abandonment, so as to amount to a total loss? Disappointment of arrival is a new head of abandonment in insurance law."

The jury have, indeed, found, that the master in delivering up the cargo, and allowing the sale thereof at New Orleans, performed his absolute duty to the owners of the cargo, and ought not to have undertaken to carry it forward to its destination in its then damaged state. And I think, that the jury were well warranted in this finding; for when a cargo on freight is so much injured, that, though capable of being carried to the port of destination and there landed, yet, from its present state, it will endanger the safety, as well of the ship, as of the cargo, or it will become utterly worthless on arrival at the port of destination, it is the duty of the master, exercising a sound discretion for the benefit of all concerned, and especially of the shippers of the cargo, to land and sell the same at the place, where the necessity arises, whether it be the original port of the shipment to which the ship returns, or any intermediate port, at which the ship arrives in the course of the voyage. It would be contrary to common sense and common justice for him to sacrifice the cargo for the benefit of another party in interest; or to elect the party, upon whom the ruin, caused by a common calamity, should fall. In a case of necessity, or of unexpected and pressing calamity, emergent in the course of the voyage, the master is by law created an agent from necessity for the benefit of all concerned; and what he fairly and reasonably does, under such circumstances, in the exercise of a sound discretion, binds all the parties in interest in the voyage, whether owners, or shippers, or underwriters. But, then, the question still remains, upon whom is any given loss to fall? And it by no means follows, because a sale of the goods has taken place at a port, short of the port of destination, by reason of a damage sustained by the cargo, the cargo specifically remaining, and capable of being carried to its destination, that there is no freight due thereon by the shippers; but that the whole loss is to be borne by the underwriters on freight. That is assuming the very point in controversy.

Let us see, then, how upon principle the case stands, as between the shippers of the cargo and the owners of the ship. We must take it, in the present case, that the sale was with the entire consent and approbation of the shippers, as well as the master, and for the benefit of the former. Now, nothing is better founded in the law on this subject, than that the shippers are bound to pay the full freight for the voyage, if the cargo is

carried to the port of destination, and specifically remains, notwithstanding at its arrival it is, by reason of sea damage, utterly ruined and worthless. This doctrine, although formerly a matter of some doubt, is now firmly established, and, indeed, must be manifestly correct upon principle.[2] It is as clear, that after the shipment of the cargo on the voyage, the shippers have no right to demand it at any intermediate port, short of the port of destination, without payment of the full freight for the voyage, whether the cargo arrive there in a damaged, or in an undamaged state. The reason is obvious. The master has a right to carry on the cargo to the port of destination; and if his ship be capable, either then, or within a reasonable time, of carrying the cargo to the port of destination, there is no ground to say, that he is not entitled to earn a full freight; and the shippers of the cargo cannot insist upon changing the original contract in invitum, and cut him off from all freight, or dismiss him with a pro rata freight. The contract of the ship-owner is to carry the cargo to the port of destination; but he by no means warrants the state, in which it shall arrive, as it may be affected by the perils of the seas, or other perils, against which his contract does not bind him. It is no answer to say, that if the cargo is carried on in a damaged state, it will be ruined. The true reply is, that the ship-owner has nothing to do with that; and that the shippers have no right to throw the loss of freight upon him, because the cargo is in danger of ruin by a calamity against which he did not warrant them. Stev. & B. Av. (by W. Phillips) 286, note 1; Id. (Ed. 1833) pp. 357–360; 3 Kent, Comm. (4th Ed.) 1. 47, p. 225.

How, then, do these principles apply to the circumstances of the present case? The ship was repaired and capable again of taking on board the cargo, at New Orleans, within a reasonable time. The master had a right to require, that it should be so taken on board and carried on the voyage, as soon as it should be in a condition to be safely reshipped. He had a right to wait until the cargo could be dried, sorted, repacked, and prepared for reshipment. The delay, arising thereby, would be a mere retardation or temporary interruption or suspension of the voyage, and not an utter prostration or destruction of it. If, then, the freight has been lost, it has been lost by his own voluntary act, and not by the necessary operation of any of the perils insured against. The whole evidence shows, that the cargo could have been dried, sorted and repacked safely for the voyage, and at the farthest, within six months. Mere delay in the voyage, or disappointment as to the time of arrival, constitutes, as we have seen, no ground for an abandonment of the voyage.

So that, here, the loss of freight has been by a voluntary abandonment of the voyage by the master; and not from necessity, superinduced by any perils insured against.

Then, how stands the case, as to the shippers of the cargo? They could not require the cargo to be redelivered to them without the payment of freight for the voyage; and if they did not choose to pay the freight, the master had a right to retain the cargo for the payment thereof, or to prepare it again for reshipment, as soon as it could be safely done, unless the owners refused to allow it to be again shipped on the voyage. If they did so refuse, then the contract for full freight would have been complete on the part of the ship-owner, from the default on the other side. But we must take the case here to be, what in reality it was, a mutual voluntary agreement on the part of the master and the shippers, that the damaged cargo should be sold. The sale must, therefore, be treated as a sale, reserving all the rights of the respective parties. And, in my judgment, the ship-owner was, for the reasons already stated, upon principle, entitled, under all the circumstances, to a full freight for the voyage, upon all the goods so sold, or relinquished. He has, therefore, not lost his freight for the voyage, from any perils insured against; but it is a clear right now existing against the shippers of the cargo, or, if lost, it has been lost by the voluntary relinquishment of the master and owner, by their own act or default. So far, I think, the principles of law would conduct us, in my judgment, upon general reasoning, independent of authority.

But let us see how the case stands upon the footing of authority. And, in this case, in my judgment, there is not only no authority adverse to the doctrine already stated; but there are authorities positively in its favor, and which, in effect, if admitted to prevail, decide the very case before this court. The case of Herbert v. Hallett, 3 Johns. Cas. 93, very nearly approaches the present. There, the insurance was upon freight on a voyage from New York to Havana. The ship was stranded on the voyage, in a gale of wind at Sandy Hook, the cargo was unladen, being undoubtedly damaged, and was brought back to New York, and delivered back to the shippers. The ship was repaired in a fortnight, and was soon afterwards sent on a different voyage. The court held, that the underwriters on freight were not liable on the policy; that the ship-owner ought to have insisted on carrying on the cargo, after the ship was repaired; and that he had, by his negligence or folly, and not by any peril insured against, lost the freight. The court said, that if the ship be injured by the perils of the sea, but is repaired within a reasonable time, and the goods are damaged, the owner will be entitled to his freight, if he offers to carry on the goods, although damaged, on the voyage,

---

[2] See Abb. Shipp. pt. 3, c. 7, §§ 7–9, and notes to American edition of 1829; Griswold v. New York Ins. Co., 3 Johns. 321.

and the shippers refuse. Nothing but a physical destruction thereof, will exempt the shipper from payment of freight in such a case. It did not appear in this case, that the cargo was incapable of being reshipped. The case of Griswold v. New York Ins. Co., 1 Johns. 204, was an insurance on freight, at and from New York to Barcelona, with liberty to touch at Gibraltar. In proceeding on the voyage, the ship was stranded on Long Island, and the cargo (flour) was, with a small exception, damaged. The cargo was taken out, and the ship got off, and repaired in six days. The cargo was received by the shippers, and sold at auction, at a loss of 27 per cent. The ship-owner abandoned to the underwriters on freight; and brought an action on the policy for the loss. The court affirmed the doctrine of the former case, holding that the ship-owner ought to have insisted on carrying on the cargo to the port of destination, so as to entitle himself to a full freight; and that there was no ground for the abandonment. Here the cargo was perishable; and upon the new trial, ordered by the court, it appeared, that if it had been carried to the port of destination, it would not have been worth the freight. But notwithstanding this fact, the court adhered to their former opinion, that the ship-owner was not entitled to recover. Griswold v. New York Ins. Co., 3 Johns. 321. In Saltus v. Ocean Ins. Co., 14 Johns. 138, there was an insurance on the ship, freight, and cargo (rye, flour, and corn); and the vessel, in the course of the voyage, was obliged to to put into a port of necessity to repair; and, there, the cargo was found to be greatly deteriorated, and in a state not fit to be reshipped; and it was accordingly sold. The vessel was repaired, so as to be able to resume the voyage. The court held, that the ship-owner could not recover on the policy on freight, as the cargo though damaged, still remained in specie; and the authority of Griswold v. New York Ins. Co. was fully recognized. The case of Whitney v. New York F. Ins. Co., 18 Johns. 208, is supposed to trench upon the principles of the former cases. It strikes me, that it is entirely consistent with those principles; and that the decision turned upon peculiar circumstances. It was a policy on freight. The cargo was hemp, which was wetted, and the master could neither dry the hemp, nor ship it on board another vessel for the voyage, in the wet and perishing condition, in which it was, there being great danger of ignition. His own ship was disabled, and could not be repaired for half her value; nor could the hemp be reshipped in another vessel to the port of destination for one half of the value of the freight, as valued in the policy. The master, therefore, broke up the voyage. The court held, that the voyage was rightfully broken up, and the ship-owner having abandoned on the policy, was entitled to recover for a total loss of the freight. The case of McGaw v. Ocean Ins. Co., 2 Law Rep. 363, manifestly proceeded upon similar principles. Thus far, the American authorities have gone; and they uniformly sustain the same doctrine.

The question has also arisen in England; and has thereof received a similar determination. In Mordy v. Jones, 4 Barn. & C. 394, there was a policy on freight of the ship at and from Kingston, in Jamaica, to Liverpool. The vessel sailed on the voyage with a cargo of cotton, coffee, sugar, hides, and other goods, belonging to various shippers. The ship having started a plank was obliged to put back to Kingston to repair, and was there repaired. The cargo was landed, and was found so wetted by the sea water, that it could not be reshipped without danger from ignition to the rest of the ship and cargo, unless it underwent a process of drying, which would detain the ship six weeks, and this would have been attended with an expense equal to the freight. Under these circumstances the shippers refusing to interfere, but approving of a sale by the master, the master sold the damaged goods, and sailed with the proceeds thereof to Liverpool, and safely arrived there. The master's proceedings at Kingston were found to be such, as a prudent man uninsured would have adopted. The master, at Liverpool, paid over the proceeds of the goods to the parties interested, without any deduction of freight. The question was, whether, under these circumstances, there was such a loss of the freight of the goods so sold, as entitled the ship-owner to recover under the policy. The court held, that he was not. The reasoning of the court is certainly not very full, or satisfactory. But it is plainly in coincidence with what has been already stated, as the just result of the principles of law on the subject of the earning of freight. It may be added, that the same doctrine may be fairly deducible (although the very case is not put) from the reasoning of Pothier, on the point where full freight is due (Pothier Traité de la Charte-Partie, notes 70–77; Id. note 121); and it is not unimportant to remark, that Mr. Stevens and Mr. Benecke, both of them gentlemen of great practical experience in this branch of the law, assert the same doctrine, as one well established (Stev. Av., Ed. 1817, 81, note 6; Id., Phillips' Ed. 1833, p. 286, note 1; Benecke, Ins., Ed. 1824, 447–449; Id., Phillips' Ed. 1833, pp. 357–367).

Upon the whole, my opinion upon a deliberate survey of the whole matter is, that the plaintiffs are not entitled to recover, in the present case, for a total loss of the freight insured. But that their claim is limited to the general average, and the loss of the freight of such of the goods, as were physically lost and destroyed by the perils of the seas.