## John Huff *v.* Richard Ashcraft.

1. In case of the death of the maker of a note, at the time of its maturity, the presentment should be to his executor or administrator. If there be no executor or administrator, then at the dwelling-house of the deceased.

2. No exception has ever been made, or recognized, from the circumstance of the death of the maker occurring on the very day of the maturity of the note—his body lying unburied in his dwelling-house.

3. Commercial rules should be uniform, simple, subject to few exceptions, and not liable to be varied to meet the apparent inconvenience or injustice of particular cases.

GENERAL TERM.—This was an action upon a promissory note, made by William Irwin and indorsed by the defendant. The defense was that there had been no sufficient demand of payment to charge the indorser. The facts, as agreed by the parties, were as follows : A notary public, on the day of the maturity of the note, the 13th December, 1854, after bank hours, on said day, received the note from the Central Bank, and was told, in the bank, that the maker was dead, and was to be buried that day. He took the note, and inquired about the court-house in Cincinnati, and, hearing the same thing, that the maker was dead, and was to be buried that day, he then proceeded to notify the indorser, and protest the note for non-payment. The residence of the maker was in the vicinity of the city of Cincinnati, and, in point of fact, he was dead and about to be buried on that day. The defendant was an accommodation indorser. No executor or administrator of the maker had been appointed. Notice of non-payment and protest was duly given to the defendant. No demand was made for payment at the residence of the maker, the notary taking no further steps toward a demand than stated above. The note was not payable at any particular place, but generally.

Upon the above facts, the case was submitted to the court at special term, and the question involved reserved to the court in general term.

*French & Kirby*, for plaintiff.

*Dodd & Huston*, for defendant.

GHOLSON, J., delivered the opinion of the court.
The rule of commercial law, applicable in such a case as

this, is very clearly stated in the elementary works written on the subject. "In case of the death of the maker, at the time of the maturity of the note, presentment for payment should be to his executor or administrator, if any one be appointed and qualified to act, and the place of residence of the executor or administrator can, upon reasonable inquiries, be ascertained. If there be no executor or administrator appointed and qualified to act, then a presentment should be made and payment demanded at the dwelling-house of the deceased." Story on Promissory Notes, §253; Chitty on Bills, 317; Parsons on Mercantile Law, 106; Malyne's Lex Mercatoria, 273.

This rule, prescribing what diligence shall be used in making a presentment for payment in case of the death of an acceptor of a bill, or a maker of a promissory note, appears rather to have been founded upon general principles of commercial law, or a recognized practice, than upon any adjudicated case, binding as an authority. No English case upon the subject appears to be cited. There are some American, but they appear to have been decided upon the authority of the elementary books. The conclusion, however, appears to be clear, that the rule, as stated, has been generally received and recognized for a considerable period, both in England and the United States.

The reason upon which the rule may be sustained is shown in an analogous case. 25 Maine, 16, 18, *Gower* v. *Moore*. "The holder can not assume the right to decide that his performance of the condition will be of no service to the indorser, and thus put that matter in issue, to relieve himself from the performance of the condition imposed upon him by law. The various relations which the parties, whose names are upon negotiable paper, sustain toward other persons, whose names are not upon it, can not be anticipated. The real debtors, who may feel obliged to pay, may not wish to exhibit themselves as such. A deceased party may possibly have held a contract of some responsible person to pay, in case the note should be duly presented for payment. So may an

indorser. To hold an indorser liable, and yet deprive him of the benefit of such a contract, could not be justified. It is best for a commercial community that the rules be simple, subject to few exceptions, and not liable to be varied, to meet the apparent injustice of particular cases."

If, however, we were not satisfied with the reason upon which a generally recognized rule of commercial law might be sustained, the consideration that it had been so recognized and adopted, as shown in the standard works on this subject, which have been the guide of the profession and of the mercantile community for a number of years, would make a departure from it injudicious. It is not enough to justify such a course, that no adjudicated case, binding as an authority upon the question, can be found. "How much of the known and admitted law of this country, in which the books abound, and by which the courts are guided, would be struck out and cease to rule us, were all struck out on which no decision has ever been formally pronounced. A doctrine may be without any decision to support it expressly, because it has never been denied; it may rest on no cases, but on the common understanding of the profession, precisely because it has never been brought into doubt." 11 Cl. & Fin. 155, 335, Lord Brougham, *O'Connell* v. *The Queen*. It is far safer to be governed by such evidence of the rule of law, as we have in the present case, than to attempt to deduce, from general principles, a new rule; and it is our "duty to administer the law according to the evidences of it which are to be found in the authorities, and in the recognized practice of the profession." 1 Keen, 369, 379, *Bullin* v. *Fletcher;* 1 Bligh, 339, 455, *Queensberry Leases*.

There is another consideration upon a question of this kind, entitled to great weight. It is the importance of uniformity in the rules of commercial law. It was this consideration which induced our Supreme Court to overrule its own decision upon an important question, and to follow a rule established by the Supreme Court of the United States.

"It is not," our Supreme Court said, "a question of local law, springing from our own fountains of jurisprudence, only,

but a general commercial principle, resting on broader foundations, which ought to be uniform among all civilized nations." 11 Ohio, 147,171, *Perrin* v. *Protection Ins. Co.* "It is of the utmost importance, that all rules relating to commercial law should be stable and uniform. They are adopted for practical purposes, to regulate the course of business in commercial transactions." 13 Peters, 136, 150, *Wallace* v. *McConnell.* "A rule of the commercial law, when once settled, ought not to be disturbed, even though the reason of it may be justly questioned. Uniformity of decision is of more importance, in such cases, than accuracy of reasoning." 8 Johns. 272, 276, *Hallet* v. *Col. Ins. Co.*; 14 Johns. 138, 142, *Saltus* v. *Ocean Ins. Co.*

These considerations, we think, authorize, and indeed require us to follow the rule which makes it necessary to charge the indorser, that there should be a presentment at the dwelling-house of a deceased maker of a note, where no executor or administrator has been appointed or qualified; and we regard this rule so far settled as to make it unnecessary that we should offer any reasons to sustain it, and that any reasons we might point out as showing the rule not to be a good one, would not justify us in refusing to recognize its obligation. There having been, therefore, no sufficient presentment on the maker, in this case, there ought to be a judgment for the defendant; and the case will be remanded, that it may be so entered.

Remanded for judgment to be entered for defendant.

Spencer, J., concurred.

Storer, J., dissented, affirming the doctrine maintained by him at special term, as reported at p. 60 *ante.*