### WADSWORTH *vs.* PACIFIC INSURANCE COMPANY.

An underwriter is not answerable for a *partial loss* on *memorandum articles*, except for general average, unless there is a *total loss of the whole* of the particular species, whether the particular article be shipped in bulk or in separate boxes or packages.

In the United States, *partial loss* and *average* are understood by commercial men to mean the same thing, and that *average other than general* includes every loss for which the underwriter is liable, except general average and total loss, which last includes total loss with salvage.

*Partial loss* includes both general and particular average, and the latter term includes all partial losses except general average.

Where the exception in the memorandum clause is broad enough to include other losses besides these arising from the inherent decay of the articles specified, the insurer is entitled to exemption from every risk plainly and explicitly included within the terms of the exception.

An underwriter is bound to know the general course of trade in relation to the voyage and the property which he insures. Where, therefore, it appeared that it was the usual custom in the port of New-York, when a vessel laden with hides was detained at quarantine, to send the cargo by light-

ers to a depot at Brooklyn, and in such transhipment to lade the hides on deck as well as in the hold of the lighter, *it was held*, that the underwriter could not for that cause object to a recovery.

ERROR from the supreme court. The action in the supreme court was on a policy of insurance on the cargo of the brig *American* from *Rio Grande* to *New-York,* there to be safely landed. The policy contained the usual memorandum, warranting *skins and hides, &c. free from average unless general.* The vessel arrived in safety at the quarantine ground, New-York, in August, 1823, laden with 3605 ox and and cow hides and 27,714 horns. From the invoice, it appeared the hides were purchased in lots, at different prices, and it was not shewn that they were put up or shipped in packages. At the quarantine ground, 2201 hides were put on board a lighter to be carried to Brooklyn, the usual place of deposits for hides. The hold of the vessel was filled with them and the remainder were on deck, rising about a foot above the railing of the vessel. When midway the harbor, between the quarantine ground and Brooklyn, a violent flaw of wind struck the lighter and threw her on her broadside, whereby 797 of the hides slipped from the deck and were lost. The master testified that the lighter was under the control of the health officer at the quarantine; that he had carried hides in the same vessel for many years, having as many and more hides on board and on the deck than he had at the time of the loss, and that he had never met with a loss before. The residue of the hides were safely delivered at Brooklyn. The sum insured was $8000, and premium 1½ per cent. At the trial of the cause, the plaintiff was non-suited; the plaintiff excepted, and on a motion to the supreme court to set aside the nonsuit, that court refused so to do, and gave judgment for the defendants, upon which occasion the following opinion was pronounced: "The articles insured in this case were what are termed *memorandum articles;* a part were totally lost, and the plaintiff has brought his action to recover as for a total loss of such part. The English authorities are in favor of the right of recovery, but this point has already been decided otherwise by the courts in this country, and such decisions remain unshaken. We consider the case of *Guerlain* v. *The Columbian Insurance*

*Company*, decided in this court, (7 Johns. R. 527,) as an authority in favor of the defendants, and without expressing an opinion as to the soundness of the view which the court took of the subject in that case, we feel bound to follow that decision as authority until it shall have been reversed, which it is the province of the court of errors and not of this court to do. The defendants must therefore have judgment." Judgment was entered accordingly, which was brought into this court by writ of error.

*R. Emmett & J. P. Hall*, for plaintiff in error. The object and intent of the *memorandum clause* in policies was to protect assurers against liability for diminution in value arising from inherent perishability in the articles insured, and not to excuse from payment in cases of absolute physical loss of a part of the cargo. It was adopted to obviate the difficulty of determining whether the injury arose from external causes or from the perishable nature of the article insured. All writers on the law of insurance, and all the cases as well in this court as in the English courts, concur in shewing that this was the origin of the memorandum clause. (1 Caines, 212. 3 Caines, 110. 14 Johns. R. 145. 16 East, 215. 5 Maule & Selwyn, 55.) The general words introduced into the clause, " and all other articles that are *perishable in their own nature*," are warranted by the assured free from average unless general, are demonstrative of its intent.

Here was a *total loss pro tanto* of the 797 hides by the very peril insured against. An absolute loss of a part may properly be called a *partial loss* in reference to the whole, but cannot with propriety be considered *an average injury* to the whole ; and for such *partial loss* the assurers are liable. It is only by confounding *partial loss* with *particular average* that a pretext can be found for denying the liability of the assurer. (Stevens on Average, 73, 4. Benecke's Prin. of Indemnity, 425.)

In *England* the law is settled that in a case like this the assured may recover as for a total loss of the part *totally lost in fact*. So the law was pronounced in *Davy* v. *Milford*, (15 East, 559,) in 1812, and has since been adhered to in

that country. (16 East, 215. 2 Maule & Sel. 376. 5 id. 55.) The case of *Hedburgh* v. *Pierson*, (7 Taunton, 154,) has been supposed (3 Kent's Comm. 246,) to question the rule of *Davy* v. *Milford;* but on examination it will be found to support it. In that case hogsheads of sugar covered by the memorandum were saved, but the greater part of the loaves in each hogshead were washed out and destroyed, by a peril of the sea; this was held to be an average loss, and that the assurer was discharged; but by referring to 2 Marshall, 433, and 1 Holt, 349, where the same case is also reported, it will be seen that C. J. *Gibbs* said, " that if any of the hogsheads had been *entirely lost* it would have been a total loss as to them."

The law in this country has been considered otherwise. In *Guerlain* v. *Col. Ins. Co.* (7 Johns. R. 527,) referred to by the supreme court in their opinion pronounced in this case, the insurers were held not liable, and properly so; because the loss there sustained was expressly guarded against by the policy, there being neither a general average nor a total destruction of the subject insured. *Biays* v. *Chesapeake Ins. Co.* (7 Cranch, 415,) decided in the supreme court of the U. S. in 1813, however comes up to the point, and is directly contrary to the decision of *Davy* v. *Milford*, and is again recognized in *Morean* v. *U. S. Ins. Co.* (1 Wheaton, 219,) and in *Humphrey* v. *The Union Ins. Co.* (3 Mason's R. 429.) Judge *Story* in 1824, held that the cases referred to in Cranch and Wheaton were obligatory upon him and decided accordingly. In that case, however, the question arose upon property deteriorated, not lost. It is therefore for this court in this conflict of authority to pronounce the law on this subject. The decisions of the supreme court of the U. S. though obligatory upon Judge Story, are not binding upon this court. " The reason of the thing," as Lord Ellenborough said, is with the English cases, and it is hoped that this court will determine in conformity with the decisions in those cases.

The policy extended to the landing of the goods. The employment of a lighter was according to the usual course of trade, with which the assurer is presumed to be acquainted. (5 Barn. & Ald. 243.)

ALBANY,
Dec. 1829.

Wadsworth
v.
Pacific In. Co.

*R. Sedgwick & G. Griffin,* for defendants in error. There is no evidence of usage as to the employment of light-ers in the port of New-York; there is nothing beyond the practice of the master of the vessel employed in this instance. There is no difference in fact between a *partial loss* and particular average. (Park on Ins. 103. Marshall, 461, 2. Jacobs' Law Dict. tit. Insurance, ch. 11, § 5. Phillips on Ins. 369. 1 Johns. C. 226. 3 Caines, 108.) Until the case of *Davy & Milford,* the distinction contended for here was never suggested. The cases in 3 Bos. & Pul. 474, and 5 Maule & Sel. 447, shew that the law on this subject in England was not considered as settled. Benecke and Stevens both admit that previous to the decision of *Davy* and *Milford,* the terms *partial loss* and *particular average* were considered synonymous. The courts of this state and of the United States, in 7 Johnson and 7 Cranch, were right in saying that a *partial loss* meant the loss of *a part of the whole matter insured;* but whether right or wrong, this having been the construction put upon the memorandum clause, submitted to, acquiesced in, and received as the law of the land, in reference to which it is to be presumed that insurance contracts have been made in this country for near twenty years, it ought not now to be disturbed. When words have acquired a specific signification, as between assurers and assured, they must be construed according to the sense and meaning thus acquired, and not according to their lexicographical meaning. (*Coit* v. *Com. Ins. Co.* 7 Johns. R. 390.)

The following opinions were delivered:

By the CHANCELLOR. The first point made on the part of the defendant is that the policy did not cover the hides on the deck of the lighter. It is a general principle that a policy does not cover goods laden upon the deck of a vessel, unless there be a special provision in the policy to that effect; it not being in the usual course of trade, a jettison of goods thus carried cannot be brought into an adjustment of general average. But that principle has no application to this case. The underwriter is bound to know the general course of trade in relation to the voyage and the property which he insures. In *Stewart* v. *Bell,* ( 5 Barn. & Ald. 238,)

the court of king's bench decided that the assurer was liable for a loss on board of a shallop, where, by the usual course of the trade, goods were thus transhipped for the purpose of landing. From the testimony in this case I infer that it was the usual custom in the port of New-York, when a vessel laden with hides was detained at quarantine, to send the cargo by lighters to the depot at Brooklyn, and to lade them on deck as well as in the hold of the lighter. If this usage was intended to be contested by the defendant he should have raised the question at the trial, so that it could have been passed upon by the jury.

The main question in this cause is that which was so long considered doubtful in England, whether the underwriter is liable for the total loss of any distinct package or integral part of a memorandum article.

The object of introducing the memorandum into the policy undoubtedly was to protect the underwriters against injuries arising to particular articles from inherent decay. But it does not follow that the excepted risk is to be confined to those injuries only. If the insurer, for the purpose of guarding against natural decay, has made the exception broad enough to include other losses, he is entitled to exemption from every risk which is plainly and explicitly included within the terms of the exception. If the terms " free from average unless general," as used in the memorandum, had by a long course of commercial usage acquired a precise and definite meaning among commercial men, it would be the duty of the court to consider them as used in that sense in a recent policy. (*Coit* v. *The Com. Ins. Co.* 7 Johns. R. 385. *Astor* v. *The Union Ins. Co.* 7 Cowen's R. 202.) But there is no evidence that the term average, as here used, has ever been understood in this country as meaning a partial loss arising from deterioration in the quality or value of the article exclusively. This clause or memorandum was introduced into the English policies eighty years since, but no decision on the point now under consideration took place in that country until 1812. Previous to that time it was treated by their elementary writers as an unsettled question. (1 Condy's Marsh. 239. Parke, 102.) Since the decision of

the king's bench, in *Davy* v. *Milford*, (15 East's Rep. 559,) it is considered as settled in that country, that if any distinct package or parcel of the memorandum article is totally destroyed or lost, the underwriter is liable as for a total loss, *pro tanto*. But he is not responsible for any damage or deterioration in value of the part which remains in specie. A late English writer considers the same principle as extending to the general clause of warranty, "free from average under three per cent," which in this country is usually fixed at five. (Benecke on Ind. 474.)

I believe in the United States the terms *partial loss* and *average* are understood by commercial men to mean the same thing; and that *average other than general*, includes every loss for which the underwriter is liable, except general average and total loss, which last includes total loss with salvage. Partial loss includes both general and particular average, and the latter term includes all partial losses, except general average. It was so understood by Judge Washington in 1807. (2 Wash. C. C. R. 52.) *Benecke* says, the term *average*, as understood at Lloyd's, does not include particular charges for salvage of the goods where there is no total loss; and that these charges, though under three per cent, are paid by the underwriter independent of the particular average. (Benecke on Ind. 472.) I am not informed whether any such practice exists in this country. If the assured can recover against the underwriter here for salvage charges on memorandum articles, it must be under that clause in the policy which authorizes the owner of the property insured, in case of loss or damage, to work, labor and travel for its preservation, and the claim must be limited to such charges as were necessary to preserve the property from a loss for which the assured would have been liable. (Per Livingston, J. 7 Cranch, 415.)

There being no decision in England which is binding upon this court on the question now before us, we are not compelled to declare a different rule on this subject from that which has been adopted by the courts of the United States. In relation to the law of insurance, it is not only important that it should be fixed and certain, but it is equally desirable

ALBANY,
Dec. 1829.

Wadsworth
v.
Pacific In. Co.

that the principles adopted should be the same in all the courts of this country; and where the law has been deliberately settled in the supreme court of the United States, or in the superior court of any particular state, the rule thus adopted should not be departed from by any other court on slight grounds.

The decision of the supreme court of this state in *Guerlain* v. *The Columbian Ins. Co. in* 1811, (7 Johns. R. 527,) was not upon the usual memorandum, and therefore may be considered as not directly in point in this case. That was an insurance upon the specific articles mentioned in the policy. Most of the articles insured were such as are usually contained in the memorandum in New-York policies. But the risk assumed in that case was special. By the express terms of the policy, the underwriters were not to be liable for any loss except such as might arise from "general average, and such total loss as should arise by the absolute destruction of the property." The distinction contended for in this case beteen partial loss and particular average did not arise, but the distinction between a total loss of a part of one species of property and the loss of the whole did arise, and was there decided. There was in that case, a total loss of a part of each of the several kinds of the property insured; and if the decision in that case was right, there is no ground for the distinction between a loss of part of the property in *quantity*, and a part in *value*. The case of *Biays* v. *The Chesapeake Ins. Co.* was decided the next year, in the circuit court of the United States for the district of Maryland. The policy was on a cargo of hides; and the facts were substantially the same as in the case now before us. The lighter sunk with a part of the cargo on board, and a large number of hides were totally lost. The court gave judgment for the defendant, and that judgment was affimed by the supreme court of the United States in 1813. (7 Cranch, 415. This case was followed by *Morean* v. *U. S. Ins. Co.* in 1814, (3 Wash-C. C. Rep. 256, 1 Wheat. 519, S. C.,) and *Humphrey*, v. *The Union Ins. Co.* in 1824, (3 Mason's Rep. 429,) where the same questions arose and were decided in the same manner. As nearly twenty years have elapsed since the first of

of these decisions, I think it must now be considered a settled rule of American insurance law, that the underwriter is not answerable for any partial loss on memorandum articles, except for general average, unless there is a total loss of the whole of the particular species, whether the particular article is shipped in bulk, as in the case before Judge Washington, or in separate boxes or packages, as in the crse decided by Judge Story.

<div style="float:right">ALBANY,<br>Dec. 1829.<br><br>Wadsworth<br>v.<br>Pacific In. Co.</div>

In *Davy* v. *Milford*, the decision was not made upon the distinction between an article in separate packages and an article in bulk. In that case there was no evidence of the total loss of any entire package. The flax saved had broken loose from several or all of the packages and floated on shore; and the recovery must have been for the gross number of pounds which had been totally lost. If any distinction existed as to memorandum articles, between a cargo in packages and a cargo in bulk, I should consider this a cargo of the latter description, as much so as if it had consisted of dried fish. In neither case does the value depend upon the number of articles, but upon their gross weight. It is true these hides were originally purchased in *numero*, but they were not put in packages or separately marked. They were purchased, unquinted, at various prices, in twenty different parcels; the prices varying from 1120 to 3200 reas per hide. They were afterwards quinted in four parcels, and then shipped together in bulk. Although hides are purchased in South America in *numero*, yet it is well understood there as well as here, that the value of a hide depends on its weight. Persons engaged in that trade understand the difference in weight between an ox hide and a cow hide; between *campo* or country hides and those which are obtained from the slaughter yards, called *chequered* hides; between quinted hides, where the smallest have been selected by way of duty to the government, and those which are unquinted. It is impossible to say what was the value of the hides which were lost in this case, except by averaging them with all the various kinds of hides that remained. In this view of the case, if the word average had no technical meaning among

commercial men, the terms of this policy would exempt the underwriters.

As this insurance was made in 1823, after most of the decisions which I have noticed had been published, it is fairly to be presumed both parties acted in reference to the rule as thus settled in this country, and that the premium for the risk was charged accordingly. Independent of the grounds above suggested, I see no good reason in favor of adopting the English rule, on this subject, in preference to that adopted in our own courts. If the question was *res integra*, I should be strongly inclined to adopt the construction which the defendants in error contend for in this case.

I think the judgment of the supreme court should be affirmed.

By Mr. Senator S. ALLEN. It seems to be admitted that the original object in introducing the exceptions contained in the memorandum clause in marine policies of insurance was, to save the underwriters from loss upon articles liable to deterioration from a quality inherent in themselves; and if this was the first time the subject came up for adjudication, 1 should incline to the opinion that the object of the memorandum being to exempt from insurance (except in a particuliar event) all such articles as are subject to injury by rot, rust, mould, vermin or fermentation, that when a total loss of part of an article occurs, as in the present case, occasioned by none of the causes to guard against which the memorandum clause was inserted, the underwriters were liable.

By a case referred to in Phillip's on Insurance, p. 492, it appears that a destruction of a part of the subject insured, with the exception of a partial loss, has been held to be a total loss of such part within the policy. Where only a small quantity of a parcel of flax, warranted free from average unless general, was saved, and the remainder totally lost, Lord Ellenborough said, there is nothing in reason or precedent to prevent us from saying that the assured may recover, for no case has been cited to shew that where the least particle of the thing exists in *specie*, the assured shall be prevented from recovering the value of that which has been totally lost. I consider that the assured are entitled to recover, as for a to-

tal loss, the value of that which was in fact totally lost. Benecke, in his treatise on the Principles of Indemnity, p. 376, after noticing the above case and others were the goods were all got on shore, though much damaged, observes; "From all these decisions, it appears without contradiction that when goods warranted free from particular average are saved, so as to remain in specie in the hands of the assured, and are of some value, however small, even much less than the freight, this is only a particular average, and no abandonment can take place; and if part of the goods be wholly lost, and another part saved, that part which is wholly lost, is considered a total loss upon the underwriters, even without abandonment."

ALBANY,
Dec. 1829.

Wadsworth
v.
Pacific In. Co.

The principle adopted by our own courts, however, appears to be, that there must be a total destruction of the whole article before a recovery against the assurer can be had. Thus, in the case of *Le Roy and others* v. *Governeur*, (1 Johns. C. 226,) where there was a memorandum in a policy that corn should be free from average unless general, it was held that the assurer is protected from every claim for a total loss where there has not been an actual physical destruction of the subject insured; and in *Gurlain* v. *Columbian Ins. Co.* (7 Johns. R. 527,) the same construction was put upon a policy against general average. The case of *Biays* v. *Chesapeake Insurance Company*, as noted in Phillips on Insurance, p. 492, appears to be a case precisely similar to the one under consideration. Hides insured free from average were put into lighters to be landed at *Nieu Diep*, and one of the lighters was sunk. Only a part of the hides were recovered. The assured claimed for a total loss of the hides not recovered, and for the expenses of recovering the others. Mr. Justice Livingston, giving the opinion of the court, said, when only a part of the cargo, consisting all of the same kind of articles, is lost, and the residue arrives in safety at its port of destination, the loss cannot but be partial. In regard to the expenses of recovering the hides, the underwriters not being answerable for the principal loss, cannot be so for the expenses on recovering the property. Chancellor Kent, in his comentaries, considers the doctrine as settled in the

ALBANY,
Dec. 1829.

Wadsworth
v.
Pacific In. Co.

American courts, that in order to charge the assurer the memorandum articles must be specifically destroyed, and not exist in specie.

It appears, therefore, from all the cases decided in our own courts, which have come within my knowledge or research, that the memorandum must be literally understood, and when insurance is made on a designated article of one kind, such as the hides in question, free from average unless general, the assured must abandon all hope of recovery, unless the vessel founder at sea, and the hides go to the bottom and not one of them be saved or recovered, or unless they be thrown overboard in order to the salvation of the ship and the remainder of the cargo.

Now, although I hold with Mr. Phillips, that so far as a policy relates to the articles contained in the memorandum, (except during a war, when there is great risk of capture,) it is a very imperfect indemnity, and one that is hardly worth stipulating for, the risk of what is construed to be a tolal loss being very small; I am nevertheless unwilling to unsettle the law as established so uniformly by our own courts. The policy being viewed as an article of agreement between the assured and the assurer, it is competent for the former to insist upon better terms, or in the event of refusal, to become his own assurer on these excepted or memorandum articles. I am therefore in favor of affirming the decision of the court below.

By Mr. Senator MATHER. On the argument before us, it was all but conceded that the rule established by the English courts in relation to the principal question presented by this case is the true rule; but it was said that the decisions of our own courts were at variance with it, and we were urged to sanction the rule which had been adopted by our own courts on account of the acquiescence of the commercial community and the length of time it had prevailed here. Considering the law as not settled here, notwithstanding the decisions alluded to; satisfied that the rule established in England is the rule which ought to prevail; and believing that the supreme court of this state concur in the opinion with me, from the intimation given by them of a desire to be relieved from the ob-

ligatory force of former decisions made in that court, I am of opinion that the judgment of the supreme court in this case ought to be reversed.

On the final question, shall the judgment of the supreme court be affirmed or reversed? the members of the court ranged themselves as follows:

*For affirmance*—The CHANCELLOR and Senators E. B. ALLEN, S. ALLEN, BENTON, MAYNARD, MC'LEAN, OLIVER, REXFORD, SMITH, STEBBINS, THROOP.

*For reversal*—Senators BOUGHTON, ENOS, HAGER, MATHER, MCMARTIN, SANDFORD, WARREN, WHEELER.

Whereupon the judgment of the supreme court was affirmed with costs.