[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 274 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 275 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 276 
The motion of the defendant's counsel for a nonsuit was properly denied by the court. The question, whether there had been a deviation of the vessel, depends upon the construction of the following clause added to the policy, September 6, 1842: "It is agreed, for one per cent additional premium, that the brig `Alfred Hammond' may have the privilege of performing a voyage from Santa Martha to Chagres and back to Carthagena, and also, for three-quarters per cent additional premium, that said brig or any other vessel or vessels may use three additional ports on the voyage from the Spanish Main to New York; to return one-quarter per cent for each port not used, and no loss being claimed." The policy was originally upon a voyage from Santa Martha to New York, with liberty to use two additional ports. It was shown that vessels engaged in trade upon the Main were accustomed to visit different ports upon the coast for the purpose of discharging the outward and taking in the homeward cargo, and, when the latter was completed, to sail directly for New York, touching at no port after leaving the Main. The question is, whether the vessel was at liberty to use the additional ports, specified in the clause added to the policy, upon the Main, or only after her final departure from the Main upon her voyage to New York. The two additional ports that, by the original policy, the vessel was at liberty to use, evidently were ports upon the Main. *Page 277 
The voyage was referred to as a whole from Santa Martha to New York, with liberty to use two additional ports. The word `from,' in the additional clause, does not necessarily exclude ports upon the Main. Such ports are included, if the voyage by the clause is referred to as a whole. The ports are described as additional to the ports the vessel was then at liberty to use. These were ports upon the Main. The intention of the parties is apparent from the terms used; and the course of trade includes ports upon the Main. There was then no deviation.
The exceptions taken by the defendant's counsel to the charge of the judge, and his refusals to charge, present the question whether a recovery can be had upon a loss of property insured, embraced in the usual memorandum clause — that is warranted free from average unless general — where it becomes impossible to transport the same to its port of destination in consequence of the perils insured against, when any portion of the property exists in specie, at an intermediate port of distress. The law in this State is settled, that there can be no recovery in case of loss of memorandum articles, when any portion thereof arrives in specie at the port of destination, although possessing no value there. (Maggrath v. Church, 1 Caines, 196; Leroy v.Gouverneur, 1 John., 226; Wadsworth v. Pacific InsuranceCo., 4 Wend., 33.) While any portion of such articles remains in specie, capable of being transported to the terminus of the voyage, and within the control of the assured, he cannot recover for a total destruction of a portion of the property, or for the loss of value, however serious such loss may be. See cases cited above. The English law differs in this respect, that by the latter, when there is a total destruction of a distinct portion of the property insured, a recovery pro tanto may be had. (2Arnould on Insurance, 1033, et seq., and cases there cited.) The precise point involved in this case remains unsettled by judicial authority in this State. The English rule makes the insurer responsible, when it becomes impossible from any of the perils covered by the policy to transport the property to its port of destination. *Page 278 
(Roux v. Salvador, 3 Bing., N.C., 266.) The same doctrine is held by the Supreme Court of the United States. (Hugg v.Augusta Ins. Co., 7. How., U.S.R., 595.) Also by the Supreme Court of Maine. (Williams v. The Kennebeck Ins. Co., 31Maine Rep., 455.) The principle of the above cases I think sound. By the contract, the assured undertakes that the property shall be transported to its port of destination, and but for the qualifying force of the memorandum clause, he would be bound for its delivery uninjured by any of the perils embraced in the policy. When the delivery of any portion of the property at its port of destination becomes impossible, by reason of any of the perils assumed by the assurer, his contract is broken. The voyage is lost. The case comes within the direct terms upon which the assurer has consented to become bound. The loss is, within the meaning of the contract, absolutely total. The assured is absolutely prevented from receiving any portion of the goods at the place where the assurer has undertaken that he shall receive them. This gives a right of recovery. The exception does not raise the point insisted upon by the defendant's counsel, whether the hides might not have been put in such a condition as to render it possible that some of them might have been transported to New York. The justice was not requested to submit that question to the jury. It cannot, therefore, be considered here. The verdict of the jury concludes the parties in this court upon the question of fact, and by that verdict it is established that the arrival of any of the property insured at New York was rendered impossible by the perils covered by the policy. The judge who tried the cause committed no error in his charge to the jury, and in his refusal to charge as requested.
The judgment should, therefore, be affirmed.
ALLEN, J., did not sit in the case. All the other judges concurring,
Judgment affirmed. *Page 279