McCunn, J. (dissenting.)
This action is on the ordinary printed policy of insurance, with the words, “ free of particular average,” inserted in the manuscript. The policy covered 801 bags of coffee, part of the cargo of the ship Mortimer Livingston, bound from Havre to New York. On the 24th of January, 1863, in approaching the Capes of Delaware, at midnight, in a terrific gale, the ship was driven on a lee shore and totally lost. Weeks after the ship foundered, a portion of the coffee was fished from the bottom of the sea, rebagged, and brought by wreckers employed by the company to this city. The portion thus recovered was found saturated with salt water, swollen and utterly worthless.
On the trial at the circuit, the jury found specially that the .coffee was of no value whatever; that it was retrieved from the wreck by the defendants, at their sole expense, and for the express purpose of making the loss a partial one in a technical sense ; they also found the loss to be total, and rendered judgment in favor of the plaintiffs for $22,883.86.
The company now contend that, despite the loss of the vessel *540 and cargo by the perils insured against, yet, because they succeeded in securing from the wreck a portion of the worthless coffee, it still retaining "its form, appearance and species, notwithstanding its utter want of value, they are not responsible under this policy.
I am clearly of opinion that they are responsible ; that the loss was total and irreparable, and the jury were entirely justifiable in their verdict.
The position taken by the plaintiffs, that the underwriters are responsible for an entire loss of the wool or of the coffee, seems to me to be fully supported by the numerous authorities cited by the plaintiffs’ counsel. This point is, however, conceded by the defendants, who simply rest their defense upon the broad principle that, as part of the coffee, although entirely worthless, was gathered by the company from the wreck, so that the plaintiffs might possess themselves of it, therefore a recovery for a total loss cannot be had.
I am-well aware of the seeming conflict of authorities, but on a thorough examination of the cases cited for the defense, . it will be seen that there is no analogy between them and the one under consideration. In all these cases the ships and cargo were not lost. They were merely damaged, and were both brought to port. In this case the ship and cargo were totally and irrevocably lost.
The company indemnified against a total loss; that is to say, if the article is destroyed by the perils of the sea, the underwriters are bound to make compensation for the whole value thereof. On the contrary, if the goods are only partially destroyed or injured by such peril, they are not liable. The question, then, that clearly presents itself in this case is, whether, in view of the facts that the coffee went to the bottom, and weeks after it was submei'ged, a small portion of it was scooped up by the* defendants out of the ship’s skeleton, and rebagged by them, although entirely worthless, (for so the jury found,) the company can, under such circumstances, be relieved from the responsibility of a total loss ? To my mind, it certainly cannot.
*541 More than a century since, (1740,) when underwriters inserted in their policies the qualifications “ free from particular average,” or words of equivalent import, it was understood to be, and so held to mean, a protection to companies against inherent defects in certain commodities, such as the heating, rotting, rusting, monlding or fermentation of grain, hides, coffee, or the like, closely packed in the ships’ holds, where it was liable to damage without the intervention of sea perils, and at a time when navigation was imperfectly understood, and long voyages were the natural consequences of such enterprises. It is true that some eminent judges have given such a construction to this qualification as to include injury by perils, where a total annihilation of the species does not take place, but I am happy to say that other judges, both here and in England, as learned, and quite as eminent, have taken the common sense view of the case, and have held that where, by the perils' insured against, the property has been so injured that it is rendered valueless, so much so that a person without insurance would abandon the property, deeming further attention to it unprofitable, in such a case the property was a total loss, although the species was not annihilated.
How absurd is the proposition contended for by the defense when you seriously consider its import and consequence. At their request you insure your property against certain perils of the sea, for which you pay a very large premium. On the homeward voyage your property is lost by the very perils insured against; yet, after you had abandoned all hope of saving any ■ portion of the property, are the company to be released because for the mere purpose of defeating the object of the insurance, (for so the jury found in this case,) they succeed in fishing up, at an enormous expense, a worthless portion of the article insured, and present the same at the port of destination, claiming thereby a total exemption from ‘all liability under their contract with you ? The proposition in itself is preposterous ; nay, ruinous, for it destroys all confidence between the merchant and the company, and I cannot, in reason or conscience, indorse it.
*542 Companies should not be permitted to take advantage of ambiguities in their policies, because the object of insurance is to make the contract an indemnity, and the policy should be construed in the strictest manner in favor of the insured, and against the insurers.
I shall now examine the principal cases upon which the defendants rely- as authority.
The first is that of DePeyster v. Sun Mut. Ins. Co. (19 N. Y. Rep. 272.) That was a case of injury to hides occasioned by the vessel shipping water, in heavy weather, on the homeward voyage, so that the hides became putrid and valueless. The vessel “ stood away” for a port of distress, and while there, part of the hides, from their intolerable stench, had to be sold, and part cast into the sea. The hides sold were dried and brought to Boston, and resold at a great sacrifice on their original cost. Counsel for the company requested the judge to charge that the plaintiff could not recover for a total loss of the hides, because a portion of the property remained in specie, and was of some value. The judge declined so to charge, but left it to the jury to say whether it was possible and profitable, under the circumstances, to transport the hides safely to Hew York. The jury found a verdict against the company, and the Court of Appeals refused to disturb the judgment, holding (p. 278) that the verdict of the jury was conclusive. The case at bar is precisely similar in this respect, to that just cited. Moreover, in the DePeyster case, the vessel arrived in safety at the end of her voyage, and the hides could have been brought in specie to their place of destination, although at great inconvenience. How, this is the latest case cited by the defense, and, although adduced as an authority in their favor, it clearly settles the law in the case under discussion, against themselves.
The next authority is the case of Le Roy v. Gouverneur, (1 John. Cas. 227.) That action had no resemblance to this. The vessel, having been loaded with corn, shipped water in heavy weather, and put in to the Capes of Delaware, where, in consequence of yellow fever prevailing at that time in Philadelphia, and the necessary delay and detention of the vessel *543 at the Capes, it was found that the corn was so injured by-water and delay that it could not be reshipped. In that case, neither the ship nor the corn was lost, for the vessel arrived in safety at Philadelphia with the corn in bulk as it was shipped, the latter being of some value.
The next case is that of Neilson v. The Columbian Ins. Co., (3 Cai. Rep. 108.) There the court say, that the question should have been left to the jury (in this case it was) as a material point, and on that ground alone, namely, because it was not left to the jury, the judgment was reversed. But even in that case, the ship came safely to port with the cargo in bulk. (See cases cited in note A to the case.)
In the case of Saltus v. The Ocean Ins. Co. (14 John. 145,) both ship and cargo arrived in port. Moreover, there was no evidence that the corn was rendered worthless. The court simply said that the plaintiff could not recover for a total loss in consequence of a deteriorated state of the cargo.
The case of Wadsworth v. Pacific Ins. Co., (4 Wend. 40,) was one in which the ship arrived safely in port, with a sound cargo of skins, but some of them were lost from the deck of a lighter. In this case, the court held, that as the skins were stowed in bulk on board the ship, and as only part of. a particular kind, which was insured in bulk, was lost, therefore the plaintiff could not, by reason of a partial loss, recover for a total loss ; and this is all that case decides.
In Moss v. Smith, (9 Com. B.) the lord chief justice left the question of total or partial loss to the jury, and they found in favor of a partial loss only. In this case the same question was left to the jury, who found in favor of a total loss. The case of Moss v. Smith is therefore strong authority in favor of the plaintiff’s recovery in this suit.
I have thus carefully examined all the principal cases cited by counsel for the defense, which would seem to support his theory of this case, and I am of opinion that not one of them sustains him. .
Now, let us examine the numerous authorities adduced by the learned counsel representing the plaintiffs.
*544 The first is that of Bryan v. The New York Insurance Company, (25 Wend. 617.) In that case the vessel sailed from one of the Carolinas, laden with nearly 2000 barrels of corn and bound for New York; was wrecked in a gale on Beacon Shoals, and taken possession of by wreckers, who saved some 27 barrels of the corn. Chief Justice Nelson, the presiding judge in the trial of the case, held that, merely because a comparatively small portion of the article insured was saved in specie, the loss should not be regarded as partial. a It was, in fact,” says the learned judge, “a total loss, as much as if the whole cargo had gone to the bottom of the sea.” This case is irresistibly conclusive in favor of the plaintiffs in this suit.
The next case of importance is that of the schooner Lodge, which also sailed from one of the Carolinas, on the 18th of November, 1823, with a cargo of corn (8000 bushels) and, in thick weather, ran ashore on Cape Hatteras Bank. The corn was so injured by water and sand, (as in this case,) that it was sold at public auction for only $70.55, and after paying the expenses of getting the grain ashore, and thence to market, $22 were left, which were paid to the consignees. In this case, the Supreme Court held that the loss was total, and the learned justice, in delivering the opinion of the court, held “ that the contrary rule would be unreasonable in itself, and not called for, in order to enforce in good faith the execution of the contract.”
The case of Whitney v. The New York Firemen’s Insurance Company, (18 John. 208,) was that of the ship Samuel Whitney, which sailed in August, 1815, from Archangel to New York, with a general cargo, consisting of hemp, and other articles. In September she experienced head winds and heavy weather, becoming thereby damaged and leaky, so that it was necessary for her to seek refuge in a port of safety. After survey, the vessel was condemned, and the cargo found to be wet arid damaged. Under the direction' of the captain, the ship and cargo were sold at auction “ for whom it may concern.” The Supreme Court held that the plaintiff had a right *545 to break up the voyage, and abandon the cargo to the underwriters as a total loss.
The case of Saltus v. The Ocean Insurance Company, (ubi sup.) was that of the ship Hudson, which sailed from Riga in October, 1810, for Hew York, part of the cargo being 126 tons of hemp. In the Horth Sea she experienced severe gales; and leaked so badly that she had to bear away for Kinsale, on reaching which port the captain ran her ashore to prevent her foundering. The vessel was surveyed and condemned. The hemp was unloaded in a damaged condition, and sold at auction. The residue of the cargo was forwarded to Hew York by another vessel. At the trial the judge left it to the jury to say (as in this case) if, in their opinion, the hemp could not be reshipped to Hew York in a merchantable condition, and if when sold, would not bring more than the expense and freight for taking it there, they would be justified in finding as for a total loss. The jury found for the plaintiffs, and the Supreme Court refused to set aside the verdict.
A very pointed case in favor of the plaintiffs’ recovery in this action is to be found in the Massachusetts Reports, (12 Cush. 554.)
The case of Walter v. The Delaware Insurance Company, (38 Penn. Rep. 187,) was that of the schooner Orb, which put to sea in May, 1851, bound for Portland, Oregon, with a general cargo, valued at $17,000. In doubling the cape, she encountered severe weather, and, as the sea was running high, she stood away for Rio Janeiro. The vessel and cargo was surveyed, condemned and sold, except a small portion of the cargo, some boots and shoes, which were sent to Baltimore. This the court held was a case of constructive total loss, although the sea damage was shown to be less than fifty per centum.
The next case is that of Poole v. The Protection Insurance Company, (14 Com. Bench, 47,) and the opinion in that case merits particular attention, because it discusses, in the most learned manner, the very question under consideration. In that case 280 hides were shipped on board the ship General ,War *546 ren, bound from Mobile to Eew York, and were “ free from particular average.” She sailed on the 24th of February, 1837, and, in the course of her voyage was wrecked near Nassau. The cargo was submerged for days. The wreckers came to the assistance of the ship, and succeeded in saving a portion of the hides, 89 in number, but in a bad condition. They were, however, dried and sold, “ for whom it may concern.” Deducting all expenses, they brought $39.84, which sum was remitted to the owners. It was held that the insurers were liable as for a total loss of the whole property insured. The presiding justice in delivering the opinion of the court, remarked, “ The objection strongly urged by the counsel for the defense, that a recovery here is precluded, because a part of the property existed in specie and was not physically destroyed, but of some value at the termination of the risk, is not, in our opinion, applicable to a case like the present, where the goods neither came to the hands of the owner’s nor reached their port of destination and again : “ By the termination of the risk in cases where if the property exists in specie, the insurer is held to be protected by the memorandum clause, is meant the termination of the risk as contemplated in the policy—the arrival of the goods at their place of destination— and not a forced termination of the risk by a peril insured against, which prevents the property from being carried to its original destination. Indeed, it is against such forced termination that it was the very object of the policy to furnish an' indemnity.”
I have now discussed nearly all of the American cases on the subject, and feel entirely satisfied that they fully sustain me in my favorable view of the position taken by the learned counsel for the plaintiffs in this case.
From the earliest insurance cases, the English courts have uniformly held, where the circumstances were, in any degree, similar to those existing in this case, that the companies were bound for a total loss.
It is quite true that Lord Mansfield, in the case of Cocking v. Fraser, (Marsh. 227,) hinted at a contrary doctrine. That *547 case, however, was not, in any respect, similar to the case under discussion. In it, and indeed in all cases looking to the doctrine “ that as long as the article remains, and is brought to the port in the ship in specie, the company is discharged,” it is to be observed that the vessels all arrived at their port of destination, with the cargoes in bulk, but either injured or destroyed. The judges, even in those cases, decided the question in favor of the insurance companies, on the strictest technical ground, that the vessels in which the goods were shipped brought the article into port, although damaged, yet in specie.
Lord Mansfield, moreover, decided the case of Cocking v. Fraser expressly on the ground that the ship was not wrecked or stranded, but arrived safely at port. He says : “ what is a total loss ? The total loss of the thing is the absolute destruction of it by the wreck of the ship.”
But let us suppose that the very learned judge did entertain, in that case, the views which the defendants propound. Mark how promptly this doctrine was disposed of in the English courts. The first we learn of “ particular average,” as I have said, is in 1749, when companies, for the purpose of protecting their risks from the inherent decay to which certain commodities are liable, inserted a provision, that they should not be responsible for loss or deterioration where it was not occasioned by the perils of the sea, and so loosely were the words employed, that when the question was seriously discussed, it was found that a much wider construction could be placed on the phraseology. Some of the judges of this country, encouraged by Lord Mansfield, fascinated, no doubt, by his transcendent abilities, and perhaps, with a desire to imitate or follow so great a light, held that the words “ free from particular average,” were quite broad, even to include the perils of the sea, as well as perils arising from inherent decay, when it fell short of absolute annihilation of the article and its species ; and these judges, without distinguishing the case of Cocking v. Fraser from the cases before them, have applied the doctrine in that case to others not analogous. . It is due to every judge *548 to take his words with reference to the cases before him, and not to state the doctrine in the abstract; and I have no doubt that if Lord Mansfield had been required to adjudicate upon many of the cases contained in our books, where this line of reasoning has been carried to extreme^, and where his- views in Cocking v. Fraser have been cited to justify their course in following him, he would have placed on record his' emphatic disapproval of such a dangerous, untenable *and inconsistent doctrine.
Immediately after the decision in Cocking v. Fraser, the English courts, supposing that Lord Mansfield, from his remarks in that case, intended to establish such a rule, embraced the first opportunity of-condemning bis course, and we find Lord Kenyon, in the case of Burnett v. Kingston, saying in emphatic language : “ I cannot subscribe to the doctrine of Lord Mansfield in the case of Cocking v. Fraser. Lord Alvanly, too, in the case of Dyson v. Rowecraft, condemned such a rule, and, in language not less forcible. Lord Ellenborough, in the case of Colgan v. The London Assurance Co., (5 M. & S. 447,) says : “ Considering the contract of indemnity, it surely cannot the • less he a total loss because the commodity subsists in specie, if it subsists only in the form of a nuisance.” This view was also entertained by Lord Lyndhurst, in the case of Blackett v. The Royal Exchange Company.
One of the principal English cases cited on this point is that of Roux v. Salvador, (3 Bing. N. C. 266.) The action was on a policy of insurance on goods shipped from South America to France. The policy contained the usual particular average clause, and covered • one thousand hides, valued at eleven hundred pounds. On the homeward voyage, in stiff, heavy weather, the vessel sprung a leak, and in consequence hauled up for a port of distress, where the goods insured- were unshipped, and being found in a damaged condition, were sold, realizing thereby £270. The vessel was repaired and sailed again for her port of destination. Lord Abinger, chief baron, after hearing one. of the most learned discussions on record, held “ that the existence of the goods, or any part of them in specie, is neither a *549 conclusive, nor, in many cases, a material circumstance to the question.” His lordship said, moreover, “ the object of insurance is to make the contract an indemnity, and nothing more, and that upon that principle is founded the whole doctrine of abandoment, in our law.” * * * “In all these cases, or in any similar, if a prudent man, not insured, would decline any further expense in prosecuting an adventure, the termination of which will probably never be successfully accomplished, a party insured may, for his own benefit, as .well as the underwriters, treat the case as a total loss, and demand the full sum insured.” Now, if the law was in any. degree unsettled in England before 1836, the very able and learned opinion delivered in this case by the Lord Chief Baron, and concurred in by all the other barons of the court, fully settled the question in England ; and we now find the English courts uniformly following the rule laid down in that case. See the opinions of Lord Chief Justice Campbell, in the case of Logan v. Jamison, (2 Ellis & Ellis 179,) and the opinion of Mr. Justice Blackburn, in the case of Granger v. Martin, (2 Best & Smith, 408,) where a doctrine, precisely similar to that laid down by Lord Abinger, is held.
In a very recent case, (1865,) in the English common pleas, (see the Jurist, vol. 116, p 650, N. S.) the ship Avon, on the home voyage from Quebec to Liverpool, with a cargo of timber, was^frozen up in her passage down the St. Lawrence. The ship and cargo- having been sold after a survey, it was held, all the justices concurring, that it was right to sell the cargo, because.it was not practically possible, in a merchantable sense, to have it carried to its. destination. In other words, as remarked by the learned justice, in delivering the opinion, “because, the cost of bringing the cargo added to the amount of depreciation, would, not have left any appreciable margin of profit to the owners.” This was a total loss.
In a most learned opinion delivered by Mr. Justice Shee, in the Queen’s Bench, in June last, (Kemp v. Halliday, 2 Bar. R. 250,) this doctrine was ably discussed and sustained..
By- a careful examination of the elementary writers on this *550 subject, it will be seen that they all favor the doctrine that a complete depreciation in the value of the article, without the annihilation of the species, is a total loss of the article. In discussing the question, they examine nearly all the authorities up to that date, making very few comments, in consequence, no doubt, of the embarrassment arising from what they deem an apparent conflict in the cases collated.
They all agree, however, in saying that the extinguishment' in value of the memorandum articles was equivalent to its ex-tinguishment in specie, and amounted to a total loss. Such is the rule propounded by Kent in his Commentaries, 9th edition, vol. 3, p. 291; and by Phillips on Insurance, vol. 2, pp. 461, 465 and 467 ; also by Arnould on Insurance, 990; 1 Duer on Insurance, 161.
The object of the policy is to obtain indemnity for any loss which the insured may sustain, in the goods being prevented, ■by the perils of the sea, from arriving safely at the port of destination ; and the destruction of the value of an article, by the perils of the voyage for which it is insured, to such a degree that it is not equivalent to the freight for the voyage, seems to me to be as absolute a loss of the article, and of the voyage, as is possible.
Applying that rule to the case in review, the judgment should, beyond a doubt, be affirmed, with costs. For here we have a ship driven in the wildest weather on a bleak seashore, and totally lost with all her cargo. The fact that this company, weeks after the disaster, proceeded to the scene of desolation, and, at enormous expense, with the express purpose (as the jury found) of defeating this policy, fished out of the sea a portion of the worthless coffee, brought it to this city, rebagged it, and went through the farce of a sale, claiming that they saved a portion of the article in specie; these acts should not be entertained for one moment by the court as a defense against what I regard a perfectly just and legal claim.
Hew trial granted.