MICHAEL CARR, Respondent, *v.* THE PROVIDENCE WASHINGTON INSURANCE COMPANY, Appellant.

*Policy of marine insurance — actual total loss — meaning of the expression — what constitutes such a loss.*

A policy insuring a vessel against the perils of the lakes contained the following provision: " This policy covers against actual total loss only."

*Held,* that to render the insurer liable under the policy, it must be shown that the subject of the insurance had been wholly destroyed and had ceased to exist as that thing, in specie, which was insured, or that no hopes of its recovery were left.

That it was not enough to show that the costs of recovering and restoring the vessel would exceed its value when restored.

While on a voyage on Lake Erie, the plaintiff's vessel was stranded on a beach some ninety miles east of Detroit; she was badly damaged and broken, and filled with water. After receiving notice of the loss, the insurer sent its agent to the wreck, who made a survey of the vessel's condition, and reported to the insurer, which determined to make an effort to save the vessel and take her into the port of Detroit. On the insurer's account, and in its own name, a contract was made with a company of wreckers, by which the insurer agreed to

pay that company $2,500 on the vessel's being delivered at Detroit. She was taken to Detroit, where she immediately sank in shallow water, leaving her decks and other parts exposed. The wreckers not having been paid, the vessel was sold in the following winter in admiralty proceedings, instituted by the wreckers, to one of them for $625. He repaired the vessel at an expense of $1,000 or $1,500, and thereafter used her as a barge upon the lakes.

*Held,* that a finding of the referee upon this and other testimony, as to the condition of the vessel, that the vessel was wholly destroyed and was an actual total loss, as a vessel, within the meaning of the policy, would not be reversed.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

In 1877 the plaintiff was the owner of the schooner Almeda, engaged in navigating the lakes, between Buffalo and Chicago, and the defendant, in June of that year, placed a policy upon her in the sum of $3,500, the risks insured against being the perils of the lakes, the risk to expire on the thirtieth of November. The value placed upon the vessel, tackle and other furniture, as stated in the policy, was $6,700. The condition of liability on the part of the insurer was expressed in the body of the policy, in the following words: "This policy covers against actual total loss only." On the second of November, during a voyage from Buffalo upon Lake Erie, the said vessel was stranded upon the beach of said lake, by a storm, at a point on the north shore of the lake, and some ninety miles east of Detroit at a place called Port Glascow. At this place the vessel was taking in a cargo of ties, its destination was the city of Buffalo, where the vessel was registered. At the time the policy was issued there was a mortgage upon the said vessel for the sum of $5,500, less payments not exceeding $750, executed by the plaintiff to one A. Starkey, as mortgagee. In the policy it was stated that the insurance was on account of Michael Carr, the loss, if any, payable to A. Starkey, as his interest may appear. The plaintiff claimed that the vessel, by reason of the injuries which it received, became an actual total loss, and claimed to recover the whole amount of the insurance, $3,500, which was awarded him by the decision of the referee. The plaintiff at the same time took out another policy on the same vessel, issued by the Security Insurance Company, for the sum of $1,500, which contained in all respects the same conditions as those mentioned in the first aforesaid policy; the same agents acting for both companies.

*Williams & Potter*, for the appellant.

*L. W. Thayer*, for the respondent.

BARKER, J.:

The referee, in his conclusions of fact, found that by reason of the perils insured against the vessel was so much damaged and broken that its value as a vessel was wholly destroyed, and it became and was an actual total loss as a vessel. In his conclusions of law he finds also that by reason of the stranding and wrecking of said vessel as stated in the finding of facts, it became and was, at the place of said stranding, an actual total loss according to the tenor of said policy. To these findings of fact and law the defendant took exceptions.

At the request of the defendant, the referee also found as a fact, " that the vessel was brought into a port of safety by the defendant's agents, and was saved in specie, and was afterwards repaired and used as a vessel in navigating the lakes."

The appellant now claims that the finding of fact that the vessel was an actual total loss is against the weight of evidence.

The insurer's liability, under the policy, was limited by the clause inserted therein, as follows : " This policy covers against actual total loss only." The construction to be placed upon a clause thus worded, when used in policies of marine insurance, is well settled and is stated very clearly by writers on the law of insurance, and has been by them formulated into a legal proposition. The clause formerly used by underwriters in this country, with a view of exempting themselves from a liability in case of a partial loss only to the subject of insurance, was generally expressed as being a risk " against total loss only." Under a policy containing a limitation of the insurer's liability expressed by the use of this phrase, the courts placed upon the same a construction that the assured was entitled to recover the whole of the insurance if there was a technical or constructive loss within the meaning of this term, by an abandonment to the insurers. In England the rule is adopted, that the ship is a total loss when she has sustained such extensive damage that it would not be reasonably practicable to repair her. The courts of that country have adopted the following test, as constituting a total loss: " If the ship when repaired will not be worth

the sum which it would be necessary to expend upon her, the repairs are, practically speaking, impossible, and it is a case of total loss." The American rule recognizes the same principle, and a different and less amount of expense is fixed as giving the right to abandonment and to claim as for a total loss. If the expense of repair will exceed half the value of the ship when repaired, she is considered a total loss, according to the American authorities, and may be abandoned. (2 Parsons on Marine Insurance [ed. of 1868], 125, 126; also, *Wallerstein* v. *Columbia Insurance Company* 44 N. Y., 204, from which we have taken the rule as stated.) Chancellor KENT states the rule concerning constructive total loss as follows (vol. 3, p. 329): "It is understood to be a fixed rule that if the ship be so injured by perils as to require repairs to the extent of more than half her value at the time of the loss, the assured may abandon; for if ship or cargo be damaged so as to diminish their value one-half they are said to be constructively lost." Arnold says: "Constructive total loss takes place where the subject insured is not wholly destroyed, but its destruction is rendered highly probable, and its recovery, though not utterly hopeless, yet exceedingly doubtful."

Underwriters, with a view of escaping liability in case of a technical or constructive total loss, as the rule had been interpreted by the courts, and to limit their liability to a case of absolute total loss, as that term was understood in the law of marine insurance, inserted in the conditions the additional word "actual," so that the limitation clause would read, "against actual total loss only." The words "actual" and "absolute" are synonymous in their meaning when used in contracts of insurance. (*Burt* v. *Brewers and Maltsters' Ins. Co.,* 9 *Hun,* 383; S. C., 78 N. Y., 400.)

The question as to what constitutes an absolute total loss, has generally arisen in England, on the use of the phrase by underwriters in the memorandum clause, in which the articles therein mentioned are "warranted free from average unless general." (Arnold on Ins., vol. 2, p. 1020.) In this country insurers to express the same degree of limitation, on their liability, use the same words, or those of equivalent meaning, as in the policy before us, viz: "Against actual total loss only." These words have the same legal operation and alike qualify the insurer's undertaking Arnold says: "Total losses are either absolute or constructive.

An absolute total loss is one which entitles the insurer to claim from the underwriter the whole of his subscription, without giving notice of abandonment. A constructive total loss is one which entitles him to make such claim on condition of giving such notice." (Vol. 2, 990.)

The loss, therefore, in this case, does not fall within the limitations of the insurer's liability, unless it was established by the evidence that the vessel became an absolute total loss, within the legal signification of that term.

The learned counsel for the plaintiff argues, that the rule in this country is settled to be this; when the costs of recovery and restoring the vessel will exceed its value when restored, it is an actual total loss and the insurer is liable. Such, in our opinion, is not the true rule of interpretation, and where the liability of the underwriter is expressly restricted to an absolute or actual total loss, there must exist such a state of things as that the subject of insurance is wholly destroyed, as that thing in specie which was insured, or at all events there must be left no hopes of its recovery. We must adopt this as the true rule by which the defendant's liability is to be determined. (*Burt* v. *Brewers and Maltsters' Ins. Co., supra*.)

In *De Peyster* v. *The Sun Mutual Insurance Company* (19 N. Y., 272), the court said: "The law in this State is settled, that there can be no recovery in case of loss of memorandum articles, when any portion thereof arrives in specie at the port of destination although possessing no value there." And, again, in the same case, "while any portion of such articles remain in specie, capable of being transported to the terminus of the voyage and within the control of the assured, he cannot recover for the destruction of a portion of the property, or for the loss of value however serious such loss may be."

In *Wallerstein* v. *Columbia Insurance Company* (*supra*), upon which the plaintiff relies in support of his argument, the question was not considered as to the true construction which should be put upon the words "actual total loss only," when used for the purpose of limiting the insurer's liability. In *Burt* v. *Brewers and Maltster's Insurance Company*, the exact question was presented and we follow the rule as we understand it to be laid down in that case by this court and affirmed by the Court of Appeals.

The defendant insists that from the evidence it was fairly established that the condition of the vessel after it was stranded, was such that it was within the power of the insured, by use of the means and appliances which he could secure by reasonable exertion, to repair and float the same and procure its arrival at the port of destination. If the ship was reduced to a complete state of dismemberment, so as to have lost its characteristic form as a vessel, and no longer subsisting under the same denomination as that which it was insured as being, then it was an absolute total loss within the meaning of the policy, though its constituent parts were existing at the place where she was stranded. A ship may be stranded in a storm without receiving great injuries, and yet upon a coast so difficult of acess, that she may be regarded as an absolute total loss. Again, she may be wrecked and stranded and receive considerable injuries, yet at a place so accessible that salvors could readily rescue her and she be taken to the port of destination or some other port for repairs, and retain the characteristics of a ship though greatly injured and damaged beyond the value of repair.

Whether the vessel was an actual total loss at the time the underwriters took possession of her, as a question of fact, is one of doubt and not easy of solution. In view of the action of the underwriters in taking possession of the vessel with the tacit consent of the owner, after his notice to them that she was a total wreck, we are of the opinion that the referee was justified in reaching the conclusion that the vessel was an actual total loss and that we should not interfere with his finding on this question. The vessel was stranded on a sand beach, and when there was no surf she was mostly out of water. The plaintiff's description of the vessel, as contained in his evidence, is as follows: "When the vessel struck the beach we went on broadside; her plankshear and her keelson were crushed, and she was humped up in the middle about three feet; her center-board box was all started; the head ledges of the center-board box were started; her sternpost was started; the rudder was unshipped and washed away; she was all started in the transom, all started loose; she filled with water up to the level with the water of the lake; I remained with her forty-eight hours to do what I could to save her, and every man I had aboard worked to the last minute; I then left her and came to Buffalo; I left mate in charge of the vessel; served

a notice on the insurance agent of the loss." After receiving notice the underwriters sent their agent to the wreck, who made a survey of her condition and it was determined by the defendant to make an effort to save the vessel and take her into the port of Detroit, which they did. On their own account and in their own name they bargained with a company of wreckers and agreed to pay them $2,500 on condition that she was delivered at Buffalo or Detroit. By use of a steam tug the vessel was hauled off and pumped out and towed into Detroit, and there left in a place of safety, where she immediately sank in shallow water leaving her decks and other parts exposed. Before the defendant took possession of the vessel the plaintiff removed the rigging and the outfit which never came into the possession of the defendant and their value does not appear. The wreckers were not paid, and during the winter following under a decree in admiralty the vessel was sold on their lien for the sum of $625 to one of the wreckers, who in the spring following placed upon the vessel repairs at the expense of $1,000 or $1,500, and it was put in use upon the lakes to be used and towed as a barge. The nature and particulars of the injury which happened to the vessel by stranding, as found by the referee, is not set forth in his report in detail, nor was he requested to do so by either party.

We are induced to concur in the referee's finding by the action of the underwriters, which must be regarded, in view of the nature and character of their liability, as a tacit admission on their part that the vessel was so much injured as to destroy it as a vessel and to make a case of an actual total loss. If there was not an actual total loss within the sense and meaning of that term as used in this policy, then the plaintiff had no right of action whatever, and none would arise in his favor by giving notice of abandonment. An omission to give such notice would not defeat a recovery if in fact there was an actual total loss. And if there is not a loss of that character, then notice of abandonment would be of no avail whatever as the assured could not maintain an action on the policy for any damage sustained, therefore it is unimportant whether or not notice of abandonment was given by the assured as the rights of neither party depend upon that question. (*Burt* v. *Brewers and Maltsters' Ins. Co.*, *supra*; Arnold on Marine Ins., 1009.)

It was for the insurers to determine, when they received notice

of loss, either to reject the claim or submit to plaintiff's demand and pay the loss. If there was no loss, within the limitations of their liability, then it was not necessary for the defendant, with a view of protecting its own interests or of performing any covenant on its part, to make any effort to rescue the vessel. When a loss occurs on risks of this character, then the underwriters may take charge of the vessel for the purpose of securing a partial indemnity out of the wreck. Mr. Arnold says: "No doubt has ever existed, that in a case of this kind (absolute total loss), the assured may recover the whole amount of the insurance without any notice of abandonment, it being understood that the wreck which comes to his hands is a salvage for the benefit of the underwriters." Abandonment is only necessary where the underwriter is liable for a partial loss, where there is something of value to abandon, but where the loss is absolute there is no value to the subject of insurance and an abandonment is wholly without effect. The action of the underwriters in this case is, therefore, cogent evidence, if not in its nature controlling, on the issue whether there was an actual total loss or not. The insured had the right, at any time prior to the time the wreck was seized by the salvors, to abandon his claim that the vessel was destroyed and assert his ownership and take charge of the property. The owner did not engage the salvors and they did not secure a lien on the vessel by any action of his. The salvors were the servants and agents of the underwriters, and the latter, by their action, created a lien by means of which the title to the vessel became vested in others and lost to the owners. The vessel, by the perils insured against, followed by the action of the underwriters, became an absolute total loss to the owner. This voluntary conduct on the part of the insurers was evidence upon the issue and strongly against their present contention. If they, in fact, did not take possession of the vessel as salvors for their own benefit, then they were trespassers. We are not to suppose that they acted as *tort feasors*, but rather that they acted in good faith towards the policyholder and had accepted his claim as set forth in his notice that his vessel was in fact destroyed by the perils insured against.

It is manifest, by one of the referee's legal conclusions, that this action on the part of the defendant was a circumstance considered

by him as tending to prove that there was an actual total loss, for he found, as a question of law, that the sale of the vessel at auction, as alleged in the complaint and as found in the statement of facts, created and was an actual loss of said vessel to the plaintiff and entitled him to recover the full value of $3,500. While we do not fully concur in the accuracy of the legal proposition, as thus stated, we refer to it as indicating that the referee, in disposing of the issues of fact, gave consideration to the action of the underwriters, as we think he properly might and should have done.

All the conditions and requirements of the policy relating to abandonment, making repairs by the insured or by the assured, and creating liens on the vessel therefor, or creating a personal liability on the part of the owner to pay the same in certain contingencies and upon a stipulated basis, are wholly inoperative and are inconsistent with the provisions that the insured should have a claim on the underwriters only in a case of an actual total loss, and have no application to this case, and were manifestly intended as means of protecting the insurers in a case where, by the contract, a claim could be made for a partial loss or for a technical or constructive total loss. It does not appear whether the memorandum clause, which was the basis of the defendant's liability, was written or printed in the policy. It is usual to fill up the memorandum clause at the time the policy is issued if any restriction is placed upon the insurer's liability controlling the printed conditions inserted therein. Whether it was written or printed it can make no difference, for the other conditions contained in the printed clauses were totally inconsistent with the limitations which the memorandum clause imposes on the underwriter's liability. The finding of fact that the vessel became and 'was 'an "actual total loss" is inconsistent with the other finding that the vessel was "saved in specie," if, in the latter finding, the phrase "saved in specie" was used by the referee in its strict and technical sense. For if the vessel was "saved in specie," that is to say, it was not so much broken up and dismembered so as to no longer exist as the thing insured, the plaintiff failed to establish a cause of action. The finding that the vessel was an actual total loss is in the very language of the condition upon which the plaintiff's right of action was made to depend. The other finding may be fairly construed as a finding that the defendant, by its agents,

did succeed in floating the vessel and taking her into a port of safety.

In view of the actual condition of the vessel, and of the defendant's action, in assuming control of the wreck and placing it in the hands of salvors, we think the referee was justified in finding that the vessel was an actual total loss, and that such finding is consistent with the further finding which we have mentioned.

The finding of the referee, that the salvors had a lien on the vessel for their services, is not based upon any condition of the policy, but upon the fact that the underwriters, by their action, gave those parties a lien upon which the vessel was sold under the decree in admiralty.

The objection made by the appellant, that the plaintiff failed to establish a right of action, and that the cause of action, if any existed, was in the mortgagee to whom the loss, if any occurred, was to be paid, is not, as we think, tenable. The loss which occurred was sustained by the plaintiff, who was the owner of the property. The contract was in terms between the owner and the insurer, and the action is founded upon the promise contained in the latter's written agreement. When the property was destroyed, the plaintiff remained the owner, and his was the loss sustained, although he had made the insurance money payable to A. Starkey, his creditor. This was not an assignment of the cause of action in any sense whatever. Starkey would have been a proper party, and if a timely objection had been taken by the defendant the court could have ordered him to have been brought in as a party. But as the plaintiff was a proper party, we are clearly of the opinion that the recovery bars an action in the mortgagee's favor, and the defendant should be treated as having waived the objection of non-joinder. (*Grosvenor* v. *Atlantic Ins. Co.*, 17 N. Y., 397; *Lasher* v. *Northwestern Ins. Co.*, 18 Hun, 102.) As the defendant did not raise the objection by his answer, he must be deemed to have waived the same. (*Osterhoudt* v. *Board of Supervisors*, 98 N. Y., 239; *Bear* v. *American Rapid Telegraph Co.*, 22 Week. Dig., 21.) If any objection, however technical it may be, is sufficient to avert this point, it should prevail to prevent a reversal of the judgment for the loss occurred in 1877, and by the terms of the policy, if a suit was not commenced within one year thereafter, the statute of limitation should apply, and at the

time of the trial, which occurred four years later, it does not appear that the mortgagee had ever presented any claim to the defendant for the moneys in controversy.

The judgment should be affirmed, with costs.

SMITH, P. J., and BRADLEY, J., concurred in result.

Judgment affirmed.